UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA M. KOZAK, BRIAN D. KOZAK, | : | 4:21-cv-01609 |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| EDWARD J. KLIKUSZEWSKI, | : | |
| BARLOW TRUCKING LINES, | : | |
| | | |
| Defendants. | | |

## MEMORANDUM OPINION

### I. Introduction.

Plaintiff Patricia Kozak and Brian Kozak bring this personal injury case seeking to recover damages as a result of a motor vehicle collision. Plaintiffs' vehicle collided with a tractor-trailer driven by defendant Edward J. Klikuszewski ("Klikuszewski"), who is employed by defendant Barlow Trucking Lines ("Barlow"). This matter is before the undersigned upon consent of the parties pursuant to 28 U.S.C. § 636(c). Discovery is complete, and the defendants have filed a partial motion for summary judgment on plaintiffs' claims that defendants were reckless, claims for punitive damages, and claims that defendants violated the Federal Motor Carrier Safety Regulations, ("FMCSR"), 49 C.F.R. §§ 350.101–399.211. For the reasons set forth below, we will deny in part and grant in part the defendants' partial motion for summary judgment.

## II.  Background and Procedural History.

On September 17, 2021, plaintiffs began this action by filing a complaint. This Court's jurisdiction of this Court is based on diversity. 28 U.S.C. § 1332; *Doc. 1* at ¶¶ 2–4.  Plaintiffs' complaint raises five counts: Count I is a claim of negligence and recklessness against Klikuszewski, as well as a negligence per se claim based on violations of the FMCSR; Count II is a claim of vicarious liability against Barlow; Count III is a claim of negligent supervision against Barlow; Count IV is Patricia M. Kozak's claim of loss of consortium against both defendants; and Count V is Brian D. Kozak's claim of loss of consortium against both Defendants.  Plaintiffs seek punitive damages on all claims.

After being served, defendants moved to dismiss the claims of punitive damages, strike the allegations of conduct exceeding negligence, and dismiss the allegations of violations of the FMCSR. *Doc. 5.*  The parties briefed the motion. *Docs. 6, 7.*  Chief Judge Brann denied defendants' motion, finding plaintiffs had met the minimum pleading standards to allege that defendants' actions were more than mere negligence and that they had violated the FMCSR. *Docs. 9, 10.* Defendants then filed an answer to the complaint. *Doc. 11.*

Subsequently, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc.*

2

*15.*  On October 4, 2022, we held a case management conference and set discovery deadlines for the parties, including a fact discovery deadline of April 3, 2023, and a dispositive motions deadline of June 5, 2023. *Doc. 20.*  Deadlines were extended multiple times as a result of discovery disputes and for settlement discussions. *Docs. 30, 34, 38, 41, 51.*

   After discovery closed and within the time we set for the filing of dispositive motions, defendants filed a motion for partial summary judgment. *Doc. 53.*  The motion includes an appendix of record materials (*doc. 53-1–53-3*), and the defendants filed a brief in support (*doc. 54*).  Plaintiffs filed a brief in opposition (*doc. 55*), with an attached appendix of record materials (*docs. 55-1–55-10*). Defendants did not file a reply brief and the time for doing so has now passed.  The motion thus has been fully briefed.

## III.  Summary Judgment Standards.

   Defendants move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial

would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). At the summary judgment stage, the judge's

function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV.  Material Facts.

Local Rule 56.1 requires a party moving for summary judgment to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1.  The Rule, in turn, requires the non-moving party to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [by the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.*  The "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements," and "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." *Id.*

Here, defendants filed a statement of facts in numbered paragraphs entitled "Lack of Evidence Supporting Claims at Issue," (*doc. 53*) and supporting documents (*doc. 53-1-53.3*).  Despite the title and the lack of a separate filing, we find the defendants' statement of facts substantially complies with M.D. L.R. Pa. 56.1.  Plaintiffs, however, have only included a "Counter Statement of Facts" in unnumbered paragraphs that do not correspond to Defendants statement of facts. *Doc. 55* at 1–7.  A counter statement of facts does not satisfy the requirements of

Local Rule 56.1. *See also Occhipinti v. Bauer*, No. 3:13-CV-1875, 2016 WL 5844327, at \*2 (M.D. Pa. Sept. 30, 2016) ("It is erroneous to only submit a separate statement of material facts that does not correspond to the moving party's statement of material facts.").  Accordingly, pursuant to Local Rule 56.1, we accept the facts set forth by the defendants as uncontroverted and admitted. *See also Weitzner v. Sanofi Pasteur Inc.,* 909 F.3d 604, 613 (3d Cir. 2018) ("Where an opposing party fails to object in its answer, those facts in the moving party's statement are considered admitted.").  Nonetheless, we still are required to conduct a full analysis to determine if summary judgment is appropriate and fully address plaintiffs' factual allegations. *Id.*  We also note that defendants did not raise any objections to plaintiffs' filing.  Accordingly, we also consider the additional evidence provided by plaintiffs to the extent that it does not conflict with the material facts presented by defendants.  Thus, the following facts are the material facts for purposes of the pending summary judgment motion:

Plaintiffs and Klikuszewski were involved in a motor vehicle accident that occurred on December 18, 2019, along Interstate 80 in White Deer Township, Union County, Pennsylvania.  Brian Kozak explained at his deposition that on the day of the accident, prior to the whiteout conditions, the weather was sunny and

the sky was clear. *Doc. 53* ¶¶ 9–10 (citing *doc. 53-1* at 3–4).[1]  It was not long

between when it started snowing lightly and it started snowing heavily. *Id*. ¶ 12

(citing *doc. 53-1* at 5–6).

Before it started snowing lightly, plaintiff Brian Kozak was driving in the

right-hand lane of Interstate 80. *Id*. ¶ 13 (citing *doc. 53-1* at 7–8).  He encountered

a tractor-trailer with hazard lights flashing, so he moved his car to the left lane and

passed the tractor-trailer. *Id*. ¶¶ 13–14 (citing *doc. 53-1* at 7–8).  Brian Kozak saw

several more tractor-trailers in the right lane and he passed some of the tractor-

trailers. *Id*. ¶¶ 15–16 (citing *doc. 53-1* at 8–9).  Plaintiff never moved back to the

right lane. *Id*. ¶ 17 (citing *doc. 53-1* at 10).

After he passed one or two tractor-trailers, it started lightly snowing. *Id*. ¶ 18

(citing *doc. 53-1* at 11).  It then started snowing heavier and heavier. *Id*. ¶ 19

(citing *doc. 53-1* at 11).  When the snow was at its heaviest, Brian Kozak was

unable to see any tractor-trailers in front of him or to his right. *Id*. ¶ 20 (citing *doc.

53-1* at 12).  He continued travelling despite the lack of visibility and did not

intend to stop his car. *Id*. ¶¶ 21–22 (citing *doc. 53-1* at 12–13).  Eventually, Brian

Kozak encountered a complete whiteout and was unable to see any distance past

---

[1] When citing to page numbers of a document, we use the page numbers from the CM/ECF header on the top of the docket.

the front of his vehicle. *Id.* ¶ 23 (citing *doc. 53-1* at 14). He continued travelling, until the accident occurred. *Id*. ¶ 24 (citing *doc. 53-1* at 14).

Brian Kozak testified that his vehicle was struck in the front quarter panel by a Barlow tractor-trailer. *Id*. ¶ 26 (citing *Doc. 53-1* at 17). He was unsure if it was the tractor or trailer that made the impact. *Id*. ¶ 29 (citing *doc. 53-1* at 44). After the impact, the Barlow tractor-trailer (driven by Klikuszewski) continued moving, and dragged plaintiffs' vehicle. *Id*. ¶ 29 (citing *doc. 53-1* at 44). Brian Kozak did not know where the tractor-trailer went relative to his vehicle. *Id*. ¶¶ 29–30 (citing *doc. 53-1* at 20). Patricia Kozak had no memory of the accident. *Id*. ¶ 31 (citing *doc. 53-2* at 3–4). Neither defendant received a citation for any violation of the FMCSR. *Id*. ¶ 34 (citing *doc. 53-3*).[2]

Klikuszewski also testified that he encountered snow flurries on December 18, 2019, while driving west on Interstate 80. *Doc. 55* at 3 (citing *doc. 55-3* at 3–4). He considered the conditions at the time of the accident to be hazardous and his visibility was reduced to the point that he could not see the trailer in front of him before it was almost too late. *Id.* (citing *doc. 55-3* at 3–4). He testified that he was familiar with the term extreme caution under the FMCSR and he understood it

---

[2] Defendants also claim that there is no evidence that defendants were in violation of any FMCSR at the time of the accident and that there is no evidence that defendant Klikuszewski was fatigued or in violation of hours of service at the time of the accident. *Doc. 53* at ¶¶ 33, 35. However, we find these statements are not facts, but rather legal conclusions.

to mean that he was to pull over and not continue down the road in hazardous weather conditions. *Id.* (citing *doc. 55-3* at 5–6).  Klikuszewski acknowledged that he was aware of his obligation as a commercial truck driver to slow down or pull the tractor-trailer off the road and not continue down the roadway in hazardous weather conditions. *Id.* (citing *doc. 55-3* at 5).

At the time of the accident, Klikuszewski worked for Barlow.  Klikuszewski was hired by Barlow on March 18, 2008, as a commercial truck driver and had previously worked for CR England. *Id.* at 4–5 (citing *docs. 55-5, 55-6*).  Barlow's pre-hire policy provides that a prospective driver is disqualified from employment if the driver has more than one moving violation in the past year. *Id.* at 4 (citing *doc. 55-7*).  However, Klikuszewski received two moving violations in the year prior to his hire: two citations on April 7, 2007 for failing to obey a sign or traffic device while driving a commercial vehicle.[3]  *Id.* at 6 (citing *doc. 55-9*; *doc. 55-6* at

---

[3] Barlow's pre-hire policy also provides that a prospective driver is disqualified from employment if the driver has more than three moving violations in the past three years and more than two recordable preventable accidents. *Doc. 55-7*. Plaintiffs note that prior to his employment with Barlow, Klikuszewski had also been involved in five prior motor vehicle accidents while driving a CR England commercial tractor. *Doc. 55* at 6 (citing *doc. 55-8).*  However, these were not recordable collisions, so they would not be relevant to Barlow's pre-hire policy. *See Doc. 55-2* at 12 (expert report noting that these were not recordable collisions, although in his opinion they were preventable).  Plaintiffs also state that Klikuszewski had more than three moving violations in the three years before he was hired, but the evidence provided only shows three (not *more than* three). *See Doc. 55* at 6.

14–15).  Klikuszewski also received speeding tickets in 2002, 2003, and 2006. *Id.*
at 5–6 (citing *doc. 55-9; doc. 55-6* at 13–15).

While employed at Barlow, and in the eleven years prior to the accident,
Klikuszewski was cited five times for hours-of-service violation, two times for
speeding, and was involved in five motor vehicle accidents while operating a
Barlow tractor-trailer. *Id.* at 6–7 (citing *doc. 55-10*).

Barlow did not formally provide any training to Klikuszewski, as they "are
not a training facility." *Id.* at 7 (citing *doc. 55-6* at 16).  However, they did send out
emails with updates on federal regulations or safer ways to operate the trucks. *Id.*
(citing *doc. 55-6* at 16).

## V.  Discussion.

Defendants argue that plaintiffs have not met their burden of presenting
evidence (1) that defendants were reckless, (2) that defendants violated the
FMCSR, and (3) that punitive damages could be awarded.  Defendants do not seek
summary judgment on plaintiffs' allegations of negligence within Counts I–III or
on plaintiffs' claims for loss of consortium in Counts IV and V.  As explained
below, we find that defendants are entitled to partial summary judgment on the
claims that they violated the FMCSR other than a claim that Klikuszewski violated

49 C.F.R. § 392.14, but that defendants are not entitled to summary judgment on plaintiffs' claims of recklessness and claims for punitive damages.

### A. Recklessness and Punitive Damages Claims.

In plaintiffs' complaint, they allege that defendants were negligent and reckless, including allegations that defendants were recklessly indifferent and grossly negligent and acted with wanton and willful indifference. *See, e.g., doc. 1* at ¶¶ 19, 21, 26, 34, 46, 71, 74. Defendants contend that they are entitled to summary judgment on the allegations that their conduct went beyond mere negligence. Defendants also argue they are entitled to summary judgment on the issue of punitive damages because plaintiffs have failed to present evidence to support such an award. "Recklessness claims in tort suits are, in a way, claims for punitive damages." *Maturo v. Pugh*, 2020 WL 4015240, at *2 (E.D. Pa. July 16, 2020) (*citing Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)). Accordingly, we analyze these issues together.

Punitive damages are imposed "to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (2005) (internal citations and quotations omitted). Under Pennsylvania law, punitive damages are available "for conduct that is outrageous, because of the defendant's evil motive or his reckless

indifference to the rights of others." *Feld v. Merriam,* 485 A.2d 742, 747 (1984);

*SHV Coal, Inc. v. Cont'l Grain Co.,* 587 A.2d 702, 704 (1991).  The state of mind

of the actor is "vital." *Hutchison*, 870 A.2d at 770.  While "negligence suggests

unconscious inadvertence," recklessness "requires conscious action or inaction

which creates a substantial risk of harm to others, whereas negligence suggests

unconscious inadvertence." *Tayar v. Camelback Ski Corp.*, 616 Pa. 385, 402

(2012).  Accordingly, "a punitive damages claim must be supported by evidence

sufficient to establish that (1) a defendant had a subjective appreciation of the risk

of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as

the case may be, in conscious disregard of that risk." *Id.* at 772.

Defendants argue that, despite the allegations in plaintiffs' complaint, after

discovery, no evidence has been uncovered showing defendants' conduct could

have gone beyond "garden variety negligence." *Doc. 54* at 8.  Specifically,

defendants contend that there is no evidence that defendants knowingly operated a

tractor-trailer in a dangerous manner, knew or had reason to know that their actions

created a high degree of risk, deliberately proceeded in disregard of known risks or

were indifferent to any known risks. *Id.*  Moreover, defendants argue that plaintiffs

have failed to include any facts that defendants acted outrageously or had a

subjective appreciation of the risk of harm to plaintiffs. *Doc. 54* at 11.

However, plaintiffs argue that Klikuszewski, as an experienced driver of a tractor-trailer, could have subjectively appreciated the risk of harm involved in failing to operate the Barlow tractor-trailer with extreme caution in hazardous weather conditions. *Doc. 55* at 11.  In Pennsylvania, "punitive damages claims have been permitted against motorists in narrow sets of circumstances indicating unreasonable actions by defendants in conscious disregard of known or obvious risks which pose a high probability of harm to others." *Rockwell v. Knott*, 2013 WL 10215759, at *5 (Pa. Com. Pl. Aug. 13, 2013) (collecting cases).  Courts in this district have also found punitive damages claims could proceed in cases where, considering a tractor-trailer driver's training and experience, the driver could have consciously appreciated a heightened risk of harm with regard to the manner in which they were driving. *See Stemrich v. Zabiyaka*, No. 1:12-CV-1409, 2014 WL 670919, at *3 (M.D. Pa. Feb. 21, 2014) ("A jury could reasonably find that a trained truck driver with six years of experience consciously appreciated the risk of driving too close to another vehicle on slick, wet roads"); *Burke v. TransAm Trucking, Inc.,* 605 F. Supp. 2d 647, 655 (M.D. Pa. 2009) (finding punitive damage claims could survive summary judgment where a genuine issue of material fact as to whether a tractor-trailer driver with experience and training "consciously appreciated the risk of harm that could result by traveling twenty miles an hour over the speed limit in a tractor-trailer while approaching a "blind" curve.");

*Gregory v. Sewell*, No. 4:CV-04-2438, 2006 WL 2707405, at *13 (M.D. Pa. Sept. 19, 2006) ("It would not be unreasonable for a jury to find that defendant Sewell, with his experience and training, consciously appreciated the risk of harm from driving fifty or sixty to sixty-five miles per hour on a freezing night that had seen snow fall and perhaps melt and freeze and consciously disregarded or was indifferent to that risk.").

Moreover, "when a dispositive issue requires a determination of a party's state of mind, 'a court should be reluctant to grant a motion for summary judgment' because 'much depends upon the credibility of witnesses in testifying as to their own states of mind, and assessing credibility is a delicate matter best left for the fact finder.'" *Stemirch*, 2014 WL 670919 at *3 (*quoting Metzger v. Osbeck*, 841 F.2d 518, 521 (3d Cir. 1988)); *Wilson v. TA Operating, LLC*, No. 4:14-CV-00771, 2017 WL 569195, at *4 (M.D. Pa. Feb. 13, 2017) ("A court's job would be much different if mere negligence or blatant malice were evident, but searching for facts to establish "reckless indifference" presents a much more complicated set of circumstances— perhaps one best suited for a jury's determination.").

Here, the record is unclear on the timing of the snowfall and the time in which the parties had to react to the change in conditions. However, for purposes of summary judgment, the evidence in the record is sufficient to show that Klikuszewski was an experienced tractor-trailer driver, that he encountered

hazardous weather conditions, and that he continued down the Interstate knowing he had very limited visibility. Considering Klikuszewski's experience and training, a jury could reasonably infer that Klikuszewski consciously appreciated the risk of harm from continuing down the Interstate in a tractor-trailer at *any* speed in these conditions, yet continued to do so.[4] Determining whether Klikuszewski had the state of mind to subjectively appreciate the risk of harm involved and consciously disregarded that risk will require an assessment of his credibility. Accordingly, we find that plaintiffs have met their burden of showing a material dispute as to whether Klikuszewski's conduct was reckless.

If Klikuszewski's actions are found to qualify as reckless, Barlow is subject to punitive damages on the vicarious liability claim. *See Stemrich*, 2014 WL 670919 at *4 ("It is well settled in Pennsylvania that punitive damages may be awarded on the basis of vicarious liability." (citation omitted)). Moreover, plaintiffs argue that they are entitled to punitive damages on their negligent hiring/ training claim against Barlow. Plaintiffs argue that Barlow's "subjective appreciation of and conscious disregard of the risk of harm posed by hiring []

---

[4] As defendants point out, *doc. 54* at 8, there are may be significant concerns about Plaintiff Brian Kozak's actions in the accident as well. It is hard to separate defendant Klikuszewski's conduct from plaintiff's conduct, as they both continued down the road despite facing the same conditions. However, the issue of comparative negligence is not before us at this time. Moreover, unlike plaintiff Brian Kozak, defendant Klikuszewski is a commercial truck driver with a higher degree of relevant experience and training.

Klikuszewski and thereafter continuing to entrust its tractor-trailer to him, requires a weighing of the evidence and a credibility determination as to whether such actions and/or inactions were reckless." *Doc. 55* at 12–13.  Plaintiffs have presented evidence that Barlow hired Klikuszewski despite their own policies indicating that they should not, due to his two moving violations in the year prior to his hire.  Plaintiffs have also presented evidence that, while employed at Barlow, Klikuszewski was cited five times for hours-of-service violation, two times for speeding, and was involved in five motor vehicle accidents while operating a Barlow tractor-trailer. *Doc. 55-10*.  From these facts, plaintiffs make the inference that, given Barlow's knowledge of Klikuszewski's unsafe driving history, Barlow's decision to entrust its tractor-trailer to him was in reckless disregard of public safety. *Doc. 55* at 12.  While Barlow may have evidence to present to the jury to show this inference is not reasonable, they have not presented such evidence or made any arguments to counter this evidence.  Accordingly, we find that there are sufficient facts presented that would allow a jury to reasonably conclude that Barlow was reckless in their hiring and retention of Klikuszewski.

We thus deny defendants' motion for summary judgment regarding plaintiffs' allegations that their conduct was reckless and plaintiffs' claim for punitive damages.

18

**B. Federal Motor Carrier Safety Regulation Violations.**

Congress intended the FMCSR to act as the "minimum safety standards for commercial motor vehicles." *Ramos-Becerra v. Hatfield*, 2016 WL 5719801, at *4 (M.D. Pa. Oct. 3, 2016) (citing 49 U.S.C. § 31136(a)). In plaintiffs' complaint, they allege that defendants' violations of the FMCSR constituted negligence per se. *Doc. 1* at ¶ 42, 73. Defendants argue that plaintiffs have failed to produce any specific factual material to support how they believe defendants violated the FMCSR, and specifically mention a lack of evidence that Klikuszewski was driving fatigued or in violation of hours-of-service requirements. *Doc. 54* at 9.

Regarding the claims that Klikuszewski was driving fatigued or in violation of hours-of-service requirements, we agree with defendants that plaintiffs have not provided any evidence to support these violations. Plaintiffs argue that the lack of evidence in the record of their allegations of hours-of-service violations stem from defendants failure to retain and produce records demonstrating that Klikuszewski was in compliance with the FMCSR hours-of-service requirements at the time of the December 18, 2019 crash. *Doc. 55* at 14. However, plaintiffs cite to no requirement that defendants retain any such records. While the FMCSR requires motor carriers to maintain an accident register for three years after the date of each accident, this register does not need to include information on hours of service for the driver. 49 C.F.R. § 390.15. Moreover, the FMCSR only requires a motor

carrier to retain records of duty status—including hours of service—for each driver for six months. 49 C.F.R. § 395.8(k)(1). A driver is only required to retain these records for the previous seven days. *Id.* § 395.8(k)(1). Here, the accident occurred on December 18, 2019, and plaintiffs did not initiate their lawsuit until September 17, 2021. Since defendants were not required to retain these records, there is no basis to find an adverse inference against defendants' failure to produce records that show Klikuszewski's compliance with the hours-of-service regulations.

Plaintiffs' complaint also alleges that Klikuszewski did not have the proper training and knowledge pursuant to 49 C.F.R. § 383.113(c) (listing required safe on-road driving skills for Commercial Driver's License applicants), § 383.111 (listing required knowledge of Commercial Driver's License applicants), and that Barlow failed to train Klikuszewski pursuant to 49 C.F.R. § 392, 383.111 (listing required knowledge of Commercial Driver's License applicants), § 383.113 (listing required skills of Commercial Driver's License applicants), § 391.21 (listing requirements in employment applications), § 391.11(general qualifications of drivers), § 391.23 (relating to motor carrier's required investigations and inquiries and obligations to obtain performance history information and motor vehicle records for drivers), 390.3 (providing general applicability provisions), § 382.301 (requiring pre-employment controlled substance/alcohol testing), and § 391.31 (requiring a road test certification for all commercial motor vehicle drivers).

However, plaintiffs have not presented any evidence that Klikuszewski did not have the proper training or required knowledge or skills under these regulations. On the contrary, the only evidence plaintiffs presented regarding Klikuszewski's knowledge was that he "testified that he was familiar with the term extreme caution under the FMCSR and he understood it to mean that he was to pull over and not continue down the road in hazardous weather conditions." *Doc. 55* at 3. Accordingly, we agree that plaintiffs have not shown that Klikuszewski was driving without the required training, knowledge, or skills.

Plaintiffs also have not presented evidence that Barlow failed to train Klikuszewski pursuant to the FMCSR. Plaintiffs presented evidence that Barlow did not formally provide any training to Klikuszewski, as they "are not a training facility." *Doc.55-6* at 16. However, plaintiffs do not connect the dots in their argument: while Barlow may have had an implied duty to train entry-level drivers, Klikuszewski began his employment with Barlow as an already experienced driver. Plaintiffs do not explain how or why Barlow would have a duty to train an already trained individual. Moreover, nothing in the regulations states that a motor carrier must train their drivers, only that the driver must have certain required skills and knowledge.[5]

---

[5] Plaintiff's brief generally states that their expert report identified additional FMCSR violations and the causal relationship between them and the accident. *Doc. 55* at 14. However, plaintiffs fail to specify which FMCSR their expert found were

However, we find that plaintiffs have presented evidence to show that

Klikuszewski may have violated 49 C.F.R. § 392.14. This regulation addresses

hazardous conditions and states that:

> Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated. Whenever compliance with the foregoing provisions of this rule increases hazard to passengers, the commercial motor vehicle may be operated to the nearest point at which the safety of passengers is assured.

49 C.F.R. § 392.14. Here, we find a factual dispute remains as to whether

Klikuszewski's decision to continue driving in the hazardous weather he

encountered violated his duties under this regulation. [6]

---

violated, let alone the factual basis for this finding. Accordingly, we decline to opine on what arguments they could have presented.

[6] The regulation does not elaborate upon the term "extreme caution" and other jurisdictions have specifically found that a violation of this regulation does not constitute negligence per se. *See e.g., Le Doux v. W. Express, Inc.,* 126 F.4th 978, 986 (4th Cir. 2025) (noting that under Virginia law, "this regulation establishes [an expanded] duty of care for a tractor trailer driver operating under hazardous conditions" rather than negligence per se). However, defendants' motion did not address the substantive law of negligence per se claims or whether striking these allegations was intended to strike any claims of negligence per se or simply allegations of FMCSR violations that plaintiffs might use to support their negligence claims. We decline to address the distinction here and will not generally dismiss plaintiffs' negligence per se claims, only the allegations that they violated other FMCSR.

Accordingly, we grant summary judgment to defendants on the plaintiffs' claims that defendants violated the hours-of-service regulations and training and knowledge requirements under the FMCSR.  However, we find that a reasonable jury could find from the evidence that Klikuszewski violated 49 C.F.R. § 392.14. Accordingly, this claim along with their accompanying claim for punitive damages are not dismissed.

## VI.  Conclusion.

For the foregoing reasons, we will deny in part and grant in part defendants' partial motion for summary judgment. An appropriate order will be issued.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge